THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TINA MARIE JOHNSON,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN COLVIN,<br><br>                    Defendant. | CASE NO. C13-5925-JCC<br><br>ORDER AFFIRMING THE COMMISSIONER |

The Court, having reviewed Plaintiff's Complaint (Dkt. No. 3), the Report and Recommendation of the Honorable John L. Weinberg, United States Magistrate Judge (Dkt. No. 29), Plaintiff's Objections to the Report and Recommendation (Dkt. No. 30), Defendant's Response to Plaintiff's Objections (Dkt. No. 31), and the remainder of the record, does hereby ADOPT the Report and Recommendation (Dkt. No. 29) and AFFIRM the decision of the Commissioner.

I.      BACKGROUND

On March 13, 2012, an Administrative Law Judge (ALJ) found Plaintiff to have "the

residual functional capacity to perform sedentary work,[1] subject to certain limitations," and her claims of disability not credible.  (*See* Report and Recommendation, Dkt. No. 29 at 2.)  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council.  (*Id.*)  Plaintiff appealed the decision of the Commissioner and her case was referred to a United States Magistrate Judge.  (*Id.*)  Plaintiff claims that her impairments, principally back and neck pain, depression, PTSD, bipolar disorder, and anxiety prevent her from sustaining employment, and that the ALJ and U.S. Magistrate Judge have erred in their findings to the contrary.  (Plaintiff's Objections to the Report and Recommendation, Dkt. No. 30 at 6.)  Plaintiff raises four main objections to the Commissioner's decision, discussed in Sections II(B)-(E), *infra*.  (*Id.*)

## II.   DISCUSSION

### A.   Standard of Review

Upon objection to a magistrate's report and recommendation, district courts are required to review the Commissioner's decision *de novo*.  28 U.S.C. § 636(b)(1).

However, a court may set aside the Commissioner's denial of social security benefits only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *See* 42 U.S.C. § 405(g) (The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  It is "more than a scintilla,

---

[1] Including her past jobs as a bookkeeper and data-entry clerk, as well as the vocational expert's suggestions of escort vehicle driver, surveillance system monitor, and a callout operator.

but less than a preponderance." *Smolen*, 80 F.3d at 1279.  The ALJ is responsible for determining claimant credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039.  When "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Claimants bear the burden of proving that they are disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A).  *See also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner. *See Valentine v. Commissioner of Social Security Administration*, 574 F.3d 685, 689 (9th Cir. 2009).

**B.     ALJ's Assessment of Plaintiff's Credibility**

Plaintiff alleges that the ALJ erred in finding her incredible with regard to the severity of her symptoms.  Specifically, the ALJ found that Plaintiff was not completely credible in her claims regarding the intensity, persistence, and limiting effects of her symptoms.

(Administrative Record, Dkt. No. 17-2 at 64.)

ALJs are "responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). In weighing a claimant's credibility, the ALJ may consider her reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *See Smolen*, 80 F.3d at 1284. *See also Turner v. Commissioner of Social Security Administration,* 613 F.3d 1217, 1224 n.3 (9th Cir. 2010); *Valentine*, 574 F.3d at 693.

The ALJ reviewing Ms. Johnson's case presented six reasons, supported by evidence, justifying the lack of credibility he found in Ms. Johnson's statements regarding the "intensity, persistence, and limiting effects" of her symptoms. First, Plaintiff's reports of her daily activities include managing her own personal care, meals, and chores, going outside daily, driving a car, grocery shopping, managing her savings account and paying bills, as well as hobbies such as reading, camping, fishing, watching television (five hours at a time, whether or not while sitting is unclear), and walking her dog. Second, Plaintiff's allegations are inconsistent with medical evidence such as 5/5 muscle strength, the ability to ambulate independently with normal gait, and the fact that spinal imaging shows only mild degenerative change, good alignment, mild spinal narrowing, and no fractures. Third, Plaintiff's alleged memory problems and irritable mood are contradicted by medical providers finding normal cognition, good memory, fluent speech, and concrete dialogue, with normal mood and affect, and finding her pleasant and cooperative. Fourth, Plaintiff made inconsistent statements to Dr. Coder regarding her ability to walk and sit and read. Fifth, Plaintiff did in fact hold jobs after the alleged onset date showing her daily

activities are somewhat greater than she generally reports.  Six, medication has been relatively effective in controlling Plaintiff's mental impairment symptoms.  (Administrative Record, Dkt. No. 17-2 at 62-67.)

Rather than challenging any of these specific reasons for doubting the credibility of her claims of disability and impairment, Plaintiff merely asserts that her medical providers' assessments support her limitations.  (Plaintiff's Opening Brief, Dkt. No. 20 at 11.)  But the well-established rule is that "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of Social Security*, 169 F.3d 595, 599 (9th Cir. 1999).  The above-mentioned six factors provide "substantial evidence" to support the ALJ's doubts of Plaintiff's credibility, and subsequent finding of absence of disability, notwithstanding the alleged congruities between Ms. Johnson's claims and her providers' alleged opinions.  Thus, the Court finds the ALJ's credibility assessment is supported by clear and convincing reasons, based on substantial evidence, and is free of legal error, and therefore must be allowed to stand.

### C.    ALJ's Assessment of Dr. Coder's Medical Opinion Evidence

Plaintiff argues that the ALJ did not give sufficient weight to Dr. Coder's 2010 medical evaluation because the mental RFC she received was not congruous with the low GAF scores that Dr. Coder assigned.  (Plaintiff's Opening Brief, Dkt. No. 20 at 6.)  Dr. Coder assigned Plaintiff a GAF score of 45, which, according to the DSM-IV-TR, indicates "serious symptoms." (Report and Recommendation, Dkt. No. 29 at 7.)  Dr. Coder concurrently opined that Plaintiff had limited ability in sustaining concentration and persistence and *possible* limited ability adapting to routine changes.  (Administrative Record, Dkt. No. 17 at 357-58.)

Nevertheless, for the following reasons, the Court finds that the ALJ did not make a legal

error, nor was unsupported by substantial evidence, in not assigning more weight to the GAF score and Dr. Coder's opinions.

First, with regard to the GAF score, Defendant correctly points out that the Commissioner recognizes that the DSM-5 no longer recommends using GAF scores to measure mental health disorders because of their "conceptual lack of clarity . . . and questionable psychometrics." (*See* Defendant's Response to Plaintiff's Objections, Dkt. No. 31 at 2.) Thus, although the GAF scores *may* be considered as opinion evidence,[2] a low GAF score is far from conclusive as regards disability.

Second, the ALJ gave specific reasons for not giving more weight to the GAF score in Plaintiff's case. Specifically, much of a GAF score is based on subjective claimant-reports. Given Plaintiff's previously established lack of credibility, this basis could logically reduce the score's weight in the mind of a rational ALJ. (Administrative Record, Dkt. No. 17 at 68-69.) That Plaintiff states that the GAF is based on a "holistic analysis" of "interlocking factors," (*see* Plaintiff's Objections, Dkt. No. 31 at 2), does nothing to rebut the ALJ's point that much of the factors contributing to the score are subjective self-reports/other factors potentially affected by claimant credibility.

Third, the ALJ *does* appear to have "credited" Dr. Coder's qualitative opinion that Plaintiff had limited sustained concentration and persistence, and a possible limited ability to adapt to changes. However, in making his assessment, the ALJ would have also given weight to other aspects of Dr. Coder's opinion, such as his statements that Plaintiff had a good ability to reason, good understanding, good memory function, fluent speech, average intelligence, and

---

[2] (*See* Plaintiff's Objections, Dkt. No. 31 at 2 ("[T]he Ninth Circuit *has* accepted GAF scores . . .") ("The GAF score is a *valid* way . . .") (emphasis added.))

good social interaction. (Administrative Record, Dkt. No. 17-2 at 66-69.) This latter part of the doctor's opinion, combined with Plaintiff's daily activities and interactions with others, as articulated in Section II(B) *supra,* provide a substantial evidentiary base for concluding that Plaintiff is not disabled, despite the low GAF and negative concentration evaluation given to her by Dr. Coder. Further, the limitations identified by Dr. Coder were duly incorporated into the ALJ's RFC. *See* Section II(D), *infra.*

### D. ALJ's Assessment of Plaintiff's RFC and Determination of the Work She Can Perform

Plaintiff alleges that the RFC determined by the ALJ, which called for sedentary work that "allows for variable concentration and pace during the day," and in which she can alternate between sitting and standing every two hours, (Administrative Record, Dkt. No. 17 at 62-63), was inconsistent with Dr. Coder's findings as regards Plaintiff's limited concentration, persistence, and ability to sustain effort. Plaintiff's objection is that variable pace and concentration during *a day* do not address what she alleges to be her inability to sustain effort *over the course of a work week.* (*See* Plaintiff's Objections, Dkt. No. 31 at 4.) However, Plaintiff does not claim, nor does it seem to be true, that Dr. Coder's findings specified the time frame and temporal cycles in which Plaintiff's limited concentration and persistence would become an issue. Thus, there is no external evidence to support Plaintiff's assertion that she cannot sustain effort over a week, *even when* those weeks are comprised of days in which there are variable concentration demands and no need to sustain effort over the full day. Given the lack of evidence to the contrary and Plaintiff's credibility, the ALJ had substantial evidence to conclude that so long as the work was such that Plaintiff could sustain it over the course of a day, Plaintiff could sustain this work over the course of a week.

### E. The New Evidence Submitted to the Appeals Council

After the ALJ's March 2012 denial, Plaintiff submitted additional evidence to the Appeals Council, including a detailed December 2012 assessment by Dr. Thomas Gritzka (Administrative Record, Dkt. No. 17-10 at 588-602) and an April 2013 lay witness assessment by Plaintiff's mother, Evelyn Lewis (Administrative Record, Dkt. No. 17-6 at 315-17). Plaintiff asserts that the evidence submitted after the ALJ's decision establishes disability and warrants payment of benefits or a remand for a new hearing.

The Magistrate Judge found that this later-acquired evidence does not undermine the substantial evidence supporting the ALJ's previous decision. This Court agrees, for the following reasons.

1) Dr. Gritzka, an orthopedic surgeon, conducted a detailed review of Plaintiff's medical history, symptoms, records, and imaging, and concluded that "[o]n a more probable than not basis, the examinee has not been able to engage on a regular and sustained basis, eight hours a day, five days a week, in sedentary, light or medium work." (Administrative Record, Dkt. No. 17-10 at 601.) Given Dr. Gritzka's expertise and specialty practice, Plaintiff contends that such a conclusion alters the "calculus of substantial evidence." (Plaintiff's Objections, Dkt. No. 30 at 5.)

However, this Court finds that the introduction of such evidence is insufficient to make the reasons upon which the ALJ based his decision "insubstantial." For one, the Court is inclined to agree with the Magistrate Judge's finding that Dr. Gritzka's conclusions likely over-relied on Plaintiff's subjective self-reporting, which is prone to the credibility concerns outlined in Section II(B) *supra*. Plaintiff contends that Dr. Gritzka's conclusions were based on "calibrated pain

based on objective sources" rather than on Plaintiff's "unsupported self-reports." (Plaintiff's Objections, Dkt. No. 30 at 6.) However, there is nothing in Dr. Gritzka's actual report that states explicitly the source of each of his conclusions, and he did indeed listen to Plaintiff's subjective reports of pain and of inability to complete certain maneuvers. For instance, the support Dr. Gritzka gave in his report for his central statement that "[o]n a more probable than not basis, the examinee has not been able to engage . . . in sedentary, light or medium work" *was in fact evidence that had been self-reported by the Plaintiff,* namely that "she . . . apparently . . . could not tolerate the prolonged sitting" required by her past job. (Administrative Record, Dkt. No. 17-10 at 601.) Thus, there would be a substantial evidentiary basis, given Plaintiff's lack of credibility, for reducing the weight of Dr. Gritzka's conclusion ruling out sustained sedentary work, based on its partial origin in Plaintiff's self-reports. Consequently, this Court finds that it is not necessarily so that Dr. Gritzka's report so changed the "calculus of substantial evidence" as to outweigh all the other evidence, such as the evidence showing that Plaintiff reads, drives her car (which does not allow for standing up whenever Plaintiff feels a pain), and shops.

Plaintiff also argues that Dr. Gritzka's conclusion that Plaintiff could not complete "sustained sedentary work" rules out her ability to complete sit/stand and variable concentration work, as suggested by the ALJ. (Plaintiff's Objections, Dkt. No. 30 at 6.) Plaintiff seems to again suggest that even if the sit/stand and variable concentration nature of the suggested work enabled her to get through a work *day,* she could not sustain this sustainable-for-one day work over the course of a typical work *week*. However, there are several problems with this. First, Dr. Gritzka's only reference to the five-day work week occurred in the context of stating what Plaintiff had been unable to do, *as indicated by her own self-reports*. Second, this statement was in reference to *unqualified* sedentary work, not the sedentary work subject to certain limitations

ORDER AFFIRMING THE COMMISSIONER
PAGE - 9

suggested by the ALJ (i.e., work in which Plaintiff would be allowed to stand every two hours to ease her pain). There is nothing at all in Dr. Gritzka's report that suggests that if the work Plaintiff was given was sustainable over the course of a day, that she could not continue this day after day. Third, the record shows that there are many things that Plaintiff presumably does regularly, likely every day, such as reading, driving, watching TV, and having meals. Although Plaintiff cannot presumably sit down and read or watch TV for eight hours a day, it seems that she is able to do so for some time at least, *and then repeats this effort both later on in the same day and also the next day and the day after.* In short, the evidence from the record shows that Plaintiff is and has been capable of repeating daily (e.g., sustaining over the course of a week) activities that she is capable of sustaining at limited periodic intervals during the day.

2)     With regard to Ms. Lewis's testimony, the Court finds that the Magistrate Judge was correct in his finding that the evidence offered by Plaintiff's mother did not bring to light any new symptom allegations that had not already been analyzed by the ALJ, via Plaintiff's reporting of her symptoms. And, as held in the oft-cited *Valentine* case, 574 F.3d at 694, duplicitous evidence offered by third-party lay witnesses does not require an individualized, and thus duplicitous, response. Therefore, even had the testimony of Ms. Lewis been introduced before the ALJ, there is no reason to think it would have caused his analysis to take a different turn, given its redundancy with Plaintiff's own claims, which were already incorporated into his analysis.

### III.   CONCLUSION

For the foregoing reasons, the Court orders as follows:

(1) The Court ADOPTS the Report and Recommendation (Dkt. No. 29);

(2) The Court AFFIRMS the decision of the Commissioner;

1   (3) The Court DENIES Plaintiff's request for further *de novo* proceedings; and

2   (4) The Clerk shall direct copies of this Order to all counsel and to Judge Weinberg.

4   DATED this 15th day of October 2014.

John C. Coughenour
UNITED STATES DISTRICT JUDGE